Whitaker, Judge,
with whom Laramore, Judge, joins,
concurring in part, and dissenting in part:
I concur, except as to dismissal of defendant’s counterclaim under the False Claims Act. I would allow defendant to recover $2,000 for each fraudulent act shown and twice the amount overpaid on the false vouchers.
FINDINGS OE FACT
The court, having considered the evidence, the report of Commissioner Paul H. McMurray, and the briefs and argument of counsel, makes findings of fact as follows:
1. Andrew T. Little, plaintiff d/b/a the Southern School of Insurance in Jackson, Tennessee, was engaged during the period in issue in the education and training of veterans under the provisions of Public Law 846, 78th Congress, enacted June 22, 1944, 58 Stat. 287. Plaintiff received authority to train Public Law 346 veterans in a course entitled “Insurance Training” from the Department of Education of the State of Tennessee and began the training and education of veteran students on October 15, 1947. Plaintiff furnished services between October 15, 1947, and June 30,1948, without a formal contract. Beginning July 1,1948, plaintiff and the Veterans Administration entered into Contract V3020V-43, for the period July 1, 1948, through December 31, 1948, embodying a tuition rate of $315.45 per course and Contract V3020V-241, for the period January 1, 1949, through December 31, 1949, embodying a tuition rate *780 of $25.34 per month or $228.06 per course. The pertinent provisions of Contract V3020V-241, are as follows:
Article 1. Instruction.
* ¡¡S * * #
(c) The contractor will provide such courses of instruction at the charges listed and described in Schedule I attached hereto, or as set forth in the catalogs, bulletins, or other publications or schedules which are submitted herewith and identified in Schedule I as part of this Contract.
* * * * *
Schedule I reads, in part, as follows:
Name of the Course-Insurance Training.
Length of Course_9 months.
Cost of the Course_$25.34 per month.
Required Attendance_ 5 hours per day, 5 days per week. Strict attendance is required. Three unescused absences in any one 30-day period will result in the dismissal of the student.
Holidays Observed_New Years, Memorial Day, July 4, Labor Day, Armistice Day, Thanksgiving, Christmas.
# * ü: ¡fe *
(e) The Veterans Administration will compensate the contractor for the books, supplies, and equipment provided in this Article as follows: At cost to the School. Estimated or present costs are set forth in Addendum I. It is understood and agreed that the institution in submitting vouchers for books, supplies and equipment furnished to veterans may add to the total of each such voucher ten percent of the total as compensation for handling and issuing of such materials.
Addendum I provides, in part, as follows:

Text boohs used and estimated cost

Elementary Life Underwriting_$5. 00
Intermediate Course_27. 00
Spectator Life Chart_ 2.00
Argus Eire Chart_ 2.00
Argus Casualty Chart_ 2.00
Health and Accident Course_ 2.00
Business Insurance Brochures_ 6.00
Unique Manual Digest_ 7.00
Little Gem Manual_ 3.00
Best’s and/or Dunne’s Manual_15.00
Par-Non-Par and Annuity Manuals_11.00
Total Per Student. 82.50
*781 Article 2. Payment.
(a) The Contractor will prepare and certify vouchers for tuition fees and other services as set forth in paragraph (c), Article 1, in the manner and form prescribed by the Veterans Administration. * * * These vouchers will be presented by the Contractor and will be paid by the Veterans Administration at such intervals and covering such periods as indicated herein:
*****
(b) The Contractor shall furnish to the Veterans Administration properly prepared and approved vouchers covering separately the charges for books, supplies, and equipment furnished to Public Law 16 and Public Law 346 veterans, as set forth in paragraph (d), Article 1, and containing a certification that the articles have been delivered to eligible veterans and that the institution has evidence of such delivery on hand and available for inspection of the Veterans Administration. * * *
Article 3. Records and reports.
The Contractor shall maintain records of attendance, deportment, and progress of veterans in training under this contract and shall make available such records and furnish such reports to the Veterans Administration at such intervals as may be mutually determined and as may be necessary and required by the Veterans Administration to administer the training of the veterans as required by the law.
* $ $ $ *
Article 6. Termination.
At any time and from time to time the Veterans Administration may terminate all or any part of this contract by giving to the Contractor 60 days’ notice in writing.
Article 7. Limitation.
It is understood and agreed that the terms of this contract are subject to and will be governed by, Veterans’ Administration regulations issued pursuant to Public Laws 16 and 346, as amended * * *.
Contract V3020V-43 also contains provisions requiring the maintenance of records and reports as in Article 3 above and the dismissal of students for three unexcused absences in any one 30-day period.
2. The approval or disapproval of institutions for the education and training of veterans under Public Law 346 is the responsibility of the state in which the particular school *782 operates under the terms of the applicable statute and regulations promulgated thereunder.
Section 4 of Public Law 346 provides, in part, as follows:
From time to time the Administrator shall secure from the appropriate agency of each State a list of the educational and training institutions (including industrial establishments), within such jurisdiction, which are qualified and equipped to furnish education or training * * *, which institutions, * * *, shall be deemed qualified and approved to furnish education or training to such persons as shall enroll under this part * * *.
Regulations of the Veterans Administration (38 CFR 21.418,1949 Ed., as amended by 14 F. R. 3411 (38 CFR, 1949 pocket Supp)), promulgated pursuant to Public Law 346, provide, in pertinent part, as follows:
§ 21.418 Approval and. disapproval of educational institutions and business or industrial establishments by State approving agency or Administrator. Institutions and establishments in which education or training is provided must be approved by the appropriate state approving agency in which they are located, or by the Administrator of Veterans’ Affairs, as being qualified and equipped to furnish education or training in accordance with Public Law 346, 78th Congress, as amended.
(a) The appropriate State approving agency, or agencies, designated by the governor will have sole authority to approve educational or training institutions within its State, other than Federal agencies and establishments and except as provided in paragraph (b) of this section.
(b) Authority given the Administrator to approve additional educational or training institutions will be exercised only under extraordinary circumstances. In requesting the Administrator’s approval of such institutions or establishments, the manager will submit a report to the assistant administrator for vocational rehabilitation and education, Veterans’ Administration, Washington 25, D. C., setting forth the circumstances necessitating the request and showing that a complete investigation has been made which indicates that the institution is qualified and equipped to offer the desired courses in accordance with the standards set up for approving a training facility for use under Part VII, Veterans’ Regulation 1 (a), as amended, and that in the case of “other training on the job,” the establishment meets the *783 requirements of paragraph 11, Part VIII, Veterans Eegulation 1 (a), as amended.
(c) When the manager of a Veterans’ Administration regional office receives a notice from a State approving agency that a course of training or an institution or establishment in which veterans are enrolled has been removed from the approved list by the State approving agency, prompt action will be taken as follows:
(1) Where the disapproval is of a school:
(i) The manager will request a statement from the State approving agency as to the reasons for the removal of the institution from the approved list and determine whether there is a likelihood that such institution will be reapproved within a reasonable length of time. A copy of the report from the State approving agency will be forwarded promptly to the director, training facilities service, vocational rehabilitation and education, Veterans’ Administration, Washington 25, D. C.
(ii) The chief, training facilities section, will assign a training facilities officer or cause a qualified employee to visit the institution for the purpose of determining whether the evidence indicates a definite intention and effort on the part of the institution to correct the inadequacies which necessitated revocation of its approval as well as the ability of the institution to correct such inadequacies within a reasonable length of time.
(iii) The manager will, upon recommendation of the chief, vocational rehabilitation and education division, set a specified date, not to exceed 60 days from the date of revocation of approval, after which no further payments by the Veterans’ Administration are to be made to the institution or to the veterans in training therein unless reapproval is received in the Veterans’ Administration regional office by the expiration date. Where an educational institution is disapproved for all courses or any particular course, the registration and research section will be notified of the name, address, and assigned code number of the institution and the names of the courses affected and the effective date of such disapproval or the date specified by the manager after which no further payment may be made in accordance with the above.
*****
(v) The institution will be notified by letter that the Veterans’ Administration will discontinue all payments to the institution as of the expiration date unless a notice of reapproval from the State approving agency is re *784 ceived in the Veterans’ Administration regional office by the expiration date.
3. The Veterans Administration, under its regulations, was required to present any information it possessed with respect to inadequacies of any school approved for the training of veterans, pursuant to Public Law 346, to the appropriate state approving agencies. The pertinent regulation (38 CFR 21.419 (b), 1949 Ed.) reads, in part, as follows:
(b) Full information concerning the inadequacy of any approved institution or establishment which has been called to the attention of the manager will be immediately presented to the appropriate State approving agency and the branch office for whatever action it or the branch office deems desirable.
4. After an investigation, the Department of Education of the State of Tennessee, by letter dated April 14, 1949, notified plaintiff that the school’s approval for veteran training was to be withdrawn effective as of the close of business April 30, 1949, because the school did not meet the State’s minimum requirements for the training of veterans under Public Law 346.
5. Promptly following receipt of the April 14,1949, letter, Mr. Little, who was operating the school, personally called on the Commissioner of Education to discuss the reasons for the withdrawal of approval and for the purpose of obtaining a revocation of the withdrawal order. As a result of such discussion and at the request of Mr. Little, the Commissioner of Education agreed to postpone the effective date of the withdrawal order. Plaintiff was advised that authorization for continued operation of his school for the training of veterans would depend upon the results of another Veterans Administration inspection of the school, which had been requested by plaintiff. After this conference, the Acting Director, Tennessee Department of Education, sent the following letter dated April 19,1949, to the Chief, Training Facilities of the Veterans Administration at Nashville. Tenn.:
Representatives from the Southern School of Insurance, Jackson, Tennessee, were in my office yesterday and requested that the effective date of termination of our approval of the school be postponed pending action *785 upon the request by them to the Veterans Administration for another inspection of the school with the view of obtaining approval for training veterans under Public Law 16.
I have granted this request and am, therefore, requesting you to postpone termination of approval until action has been taken upon their request for the inspection.
A copy of this letter was sent to the plaintiff school.
6. Following receipt of the letter of April 19, 1949, indicating that further approval of the school would be dependent upon the outcome of a further inspection of the school, Mr. Little, the owner and director of the school, destroyed his attendance records and many of the property records relating to veterans who were in training prior to January 3, 1949.
7. The Veterans Administration made a spot check of plaintiff’s school and the available records on May 6 and 9, 1949, to determine whether there had been compliance with the requirements of the state agency and with the terms of the contract, pursuant to Veterans Administration regulations (38 CFE 21.420). The applicable regulation reads, in part, as follows:
21.420 Ewtent of 8up&~vi8ion of schooZs or coZieqes.
(a) Pursuant to the terms of Part VIII, Veterans' Regulation 1 (a), as amended (38 U. S. C. ch. 12 note), schools and colleges being utilized for the purposes of education or training will not be subject to any supervision or control whatsoever by the Veterans Administration. It is presmned and expected that the designated State approving agency will approve oniy such institutions as are fully qualified and equipped to give good courses of instruction and are otherwise satisfactory on the basis of current inspection, well-established service, and reputation to furnish effective education and training. It is also presumed that approved institutions will accept only veterans who are qualified to pursue the courses they select. It is also presumed that the State approving agencies themselves will maintain such supervision over approved institutions as may be needed.
(b) Repr~s~ntatives of the Veterans~' Administration as required by law, will carefully refrain from assuming any responsibility for any training program elected by a veteran enrolled under authority of title II, Public *786 Law 346, 78th Congress, and from overseeing or directing any of the practices of any school or college insofar as they relate to a veteran enrolled under that law. However, assistance of an. advisory nature may be given when requested by the institution.
(c) The following will not be considered as supervising or controlling the institution:
(1) Eequests for information concerning the component parts of a course offered by a school or college.
(2) Obtaining such information as is necessary to determine whether an institution is qualified or equipped to furnish training.
(31 Determination of.wages or salaries to be paid.
(4) Determination as to adequacy of space, equipment, and instructional personnel.
(5) Verification of charges made by the institution to the Veterans Administration.
The spot check, confined to records beginning January 3, 1949, because prior records had been destroyed by plaintiff, revealed irregularities on the part of the plaintiff school with respect to books and supplies, attendance and the charges submitted by plaintiff in his vouchers for those items and services. As a result further payments were suspended by the Veterans Administration, effective April 30,1949, pending a more complete audit.
On July 20,1949, an audit team from the Veterans Administration conducted an audit and subsequently prepared a report on available attendance records and other records pertaining to 52 veterans enrolled in the school. The audit team found that the symbols used by the instructors to indicate a veteran’s status of attendance were as follows:
P indicated “Present”
A indicated “Absent”
S indicated “Sick”
L indicated “Late”
According to the audit report the attendance records showed almost perfect attendance by all students, but contained many erasures and alterations, and students were marked present on days when they originally had been marked A, S, or L. The report further indicated that the practice of alteration was widespread and that in the case *787 of one student, there were nineteen days on which erasures a.ud alterations were made showing that the student was present on days when previously he had been marked absent. The audit report also revealed the existence of the following types of irregularities: (1) entries had been made on school records to show that students commenced training at a date earlier than the actual date of training; (2) some students were granted leave from classes and marked P for present; (3) students were marked present on the attendance records when their files contained a doctor’s certificate stating that they were ill and unable to attend classes; (4) instructors marked students present on days when such students were actually absent; (5) certain students were reported as having made up classes on Saturdays when in fact such students never attended Saturday make-up classes; and (6) students signed receipts for books and supplies before receiving them and the Veterans Administration was billed for them before they were issued and, in some instances, for items never issued to students.
The evidence substantiates most of the findings in the audit report and reveals other irregularities not specifically noted in the audit report.
The audit report was sent to the Department of Education of the State of Tennessee for its information in accordance with Veterans Administration regulations.
8. After the receipt of the above-mentioned report, the Tennessee Department of Education made an investigation of conditions existing at plaintiff school. Subsequent to such investigation, the Tennessee Department of Education issued an order removing the plaintiff school from the State’s list of schools approved for the training of veterans under Public Law 346, effective August 3,1949. The state agency’s letter of notification to the plaintiff, dated August 3, 1949, reads as follows:
On April 14, 1949, this office wrote you in regards to your school not meeting the criteria as set forth, and withdrew the approval of your school as of the close of business April 30,1949.
On April 19, this office requested the Veterans Administration to extend the approval of your school un *788 til another inspection by the V. A. could be made. This request was granted, pending another investigation by the Veterans Administration. The V. A. has recently informed me that another investigation was made, and due to the conditions they found it has been determined that your school does not meet the minimum criteria as set forth by the State Department of Education, Division of Veterans Education.
In view of these facts, it is necessary that this office withdraw the approval of your institution as of this date.
It appears that the Veterans Administration acted within its authority in connection with its inspections and investigations of plaintiff school under Public Law 346 and the regulations promulgated thereunder in reporting the conditions found to the proper state agency. The revocation of plaintiff’s prior approval by the state approving agency was based upon the results of its own investigation and the irregularities reflected by the Veterans Administration report.
9. Immediately upon receipt of the aforesaid notice of revocation of approval, plaintiff, on August 4, 1949, closed his school and discontinued the training of veterans. Plaintiff was not required, under the state agency’s revocation order, to discontinue all operations of his school. The revocation pertained only to plaintiff’s authority to train veterans.
10. Upon learning that plaintiff had closed his school, the Veterans Administration cancelled Contract V3020V-241 by registered letter addressed to Mr. Little, director of the school, dated August 9,1949, received by him on August 11, 1949. The letter reads as follows:
You are notified that your Contract No. V3020V-241 is hereby terminated by reason of discontinuance of operations. Such termination will be effective August 5, Í949.
Please sign and return all six (6) copies of the enclosed Supplement No. 1 to the original contract. One copy signed by the Chief, Vocational Eehabilitation and Education Division, will be returned for your files.
Please acknowledge receipt of this notice as indicated below.
Very truly yours,
(S) L. L. Beelek,

Acting Manager.

*789 Acknowledgment oe Notice
The undersigned hereby acknowledges receipt of a signed copy of the foregoing notice, — 1949. Two copies of this Notice, both signed, are returned herewith.
Southern School oe Insurance.
(Name of contractor)
(Title j"
JOM: js.
11. On the basis of the facts revealed by the spot check and audit made in 1949 the attendance records, submitted by plaintiff, were audited in August 1954 by the Veterans Administration for the purpose of determining the amount plaintiff had been overpaid for tuition for the period January 1 to April 30, 1949. The Finance Officer of the Veterans Administration, who made this study, segregated the overpayments reported into four categories: (1) over-payments for dates trainees were absent subsequent to the date interruption of training was required by contract provisions due to excessive absences; (2) overpayments for dates trainees were authorized by plaintiff to be in a leave status; (3) overpayments for dates prior to the date trainees first attended school and commenced training; and (4) overpay-ments for dates subsequent to the date trainee last attended school. According to the Finance Officer’s report these over-payments amounted to $362.91. However, because of the condition of plaintiff’s records, it is impossible to determine if this was the amount actually overpaid plaintiff although it is clear from the evidence that overpayments were made.
Defendant was unable to determine the amount of overpayment for the year 1948 because plaintiff had destroyed the attendance records for that year.
12. Plaintiff submitted and received payment of vouchers, certified to be correct and just, for services rendered during January, February, March, and April of 1949 under Contact V3020V-241. It is manifest from the record that certain of the claims submitted by plaintiff for this period were fraudulent in that they included services not actually rendered and that plaintiff knowingly submitted such fraudulent claims for the purpose of receiving payment from the *790 defendant. However, due to the condition of plaintiff’s records and the conflicting testimony, it is impossible to determine with any degree of accuracy the specific instances of fraud or the amount actually overpaid plaintiff.
It is reasonable to conclude from the evidence that plaintiff also submitted fraudulent claims for services rendered in 1948. However, due to the fact that plaintiff destroyed its records for 1948 it is not possible to determine the amount overpaid plaintiff for that year with any degree of accuracy.
13. It was provided by Contract V3020V-241 that plaintiff would supply certain books and supplies to veteran students and the Veterans Administration would pay for such items at cost to plaintiff plus 10 percent as a handling charge.
While it is reasonable to conclude from the evidence that overpayments were made by plaintiff for books and supplies under Contract VS020V-241, the condition of the record makes it impossible to determine the amount of the overpay-ments with any degree of accuracy.
14. As noted in Finding No. 7, the Veterans Administration suspended all payments to plaintiff as of April 30,1949. However, the Veterans Administration made a payment subsequent to that date. On April 4,1950, a voucher D. O. No. 152815 in the sum of $423.86 for tuition, books, and supplies was paid. Payment of said voucher was apparently made inadvertently or because of an error on the part of an employee of the Veterans Administration. While it may have been an administrative error to pay this amount in view of the prior suspension of payments to the plaintiff, it appears that the services were rendered under the contract between the parties. Plaintiff insists the payment was in the nature of an adjustment but the record does not substantiate this viewpoint.
15. The school conducted make-up classes on Saturdays. A number of former students testified that they would occasionally be absent for a day during the regular school-week (Monday to Friday inclusive) and be allowed to make up the lost time on Saturdays. One of the instructors corroborated the existence of a policy which permitted1 this to be done, pointing out that he had often worked on Saturdays to instruct such students. The instructors took turns in this *791 role on Saturdays. Mr. Little also testified to the same effect.
It seems well established, however, that some students, who lost time during the regular school-week, never attended make-up classes but were nevertheless given credit for having done so. The record is not adequate to establish the exact amount of time involved in this connection or to show any definite amount of overpayment which may have resulted therefrom.
16. Plaintiff claims he is entitled to recover for tuition, books, and supplies for the period from May 1 to August 4, 1949, under Contract V3020V-241. The school was in operation during that period and plaintiff has not received payment for the services rendered.
CONCLUSION OE LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes that the plaintiff attempted to practice, and did practice, fraud against the United States in the proof or establishment of claims under the contract in suit and plaintiff’s claims under that contract are forfeited pursuant to 28 U. S. C. § 2514, and plaintiff’s petition is dismissed.
It is further concluded that the defendant is not entitled to recover on its counterclaims, and the counterclaims are therefore dismissed.